UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| OLIVIA GRACE JACKSON, | DOCKET NO.: 4:23-cv-193 |
| Plaintiff, | **CIVIL ACTION** |
| v. | |
| FORT OSAGE R-1 SCHOOL DISTRICT | **JURY TRIAL REQUESTED** |
| Defendant. | |

## COMPLAINT

Plaintiff Olivia Grace Jackson ("Plaintiff" or "Mx. Jackson"), by and through their undersigned counsel, files this Complaint and Jury Demand against Fort Osage R-1 School District ("Defendant" or "District"):

### I. NATURE OF THE ACTION

1. This is an action for relief from violations of Title VII of the Civil Rights Act of 1964, *as amended* ("Title VII"), Title IX of the Education Amendments of 1972 ("Title IX"), the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and the First Amendment to the United States Constitution.

2. Plaintiff, a non-binary[1] student teacher from the University of Missouri – Columbia, introduced themself using their preferred pronouns at Fort Osage High School ("Fort Osage"). After being approached by several students who also identified as non-binary, Mx.

1

Jackson honored those requests and utilized gender neutral pronouns for these students, as instructed by their college curriculum. In response to these acts, the District: (a) removed Mx. Jackson from all student teaching and conducting assignments (including their "capstone" assignment conducting the Fort Osage choir); (b) rejected Mx. Jackson's employment at an elementary school within the District; and (c) canceled their previously scheduled substitute teaching assignment. The District's actions, among others outlined herein, amount to unlawful discrimination against Plaintiff based on their gender identity and a violation of their First Amendment rights. Mx. Jackson suffered a loss of employment opportunities, a loss of income, and severe emotional distress.

3. Plaintiff seeks declaratory relief, compensatory damages, punitive damages, and reasonable attorneys' fees and costs as remedies for Defendant's violations of their rights.

## II. THE PARTIES

4. Plaintiff is and was at all times relevant an adult resident of the State of Missouri. Mx. Jackson was a senior at the University of Missouri – Columbia during the spring semester of 2021 assigned to student teach at Defendant District.

5. Defendant is a public school system organized and operated under Missouri law located at 2101 N. Twyman Road, Independence, MO 64058.

6. At all times relevant herein, Defendant had at least fifteen employees, and was therefore an "employer" within the meaning of Title VII.

7. Upon information and belief, Defendant received federal assistance at the time of the alleged discriminatory acts described herein.

---

[1] A non-binary person is someone who does not identify as exclusively a man or woman. Plaintiff uses the pronouns "their" and "them" throughout consistent with their identity.

## III. JURISDICTION AND VENUE

8. This Court has jurisdiction of Plaintiff's federal law claims pursuant to 28 U.S.C. § 1331, as this case involves questions of federal law.

9. This Court has supplemental jurisdiction over the related state law claim pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy under Article III of the United States Constitution. Plaintiff's state law claim shares all common operative facts with their federal law claims, and the parties are identical. Resolving Plaintiff's federal and state claims in a single action serves the interests of judicial economy, convenience, consistency, and fairness to the parties.

10. Venue is proper in, and Defendant is subject to the personal jurisdiction of, this Court because Defendant maintains facilities and business operations in this District, and all or most of the events giving rise to this action occurred in this District. 28 U.S.C. § 1391(b); 42 U.S.C. § 2000e-5(f)(3).

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff timely filed charges of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Missouri Commission on Human Rights ("MCHR").

12. On or around May 6, 2022, the MCHR issued a Notice of Right to Sue.

13. On February 1, 2023, the EEOC issued its Notice of Right to Sue letter.

14. Plaintiff has timely filed this action and has complied with all administrative prerequisites to bring this lawsuit.

## V. FACTUAL ALLEGATIONS

15. At all times material to this action, Plaintiff was a vocal music education student

3

Case 4:23-cv-00193-BCW   Document 1   Filed 03/21/23   Page 3 of 18

at the University of Missouri – Columbia assigned to student teach at the Defendant District.

16. Student teaching is a requirement of graduation and a critically important part of a vocal music student's education. It provides the student teacher with the opportunity to apply the skills and theories learned in the classroom to the teaching environment. This allows student teachers to become more proficient at instructing students, implementing adaptable curriculum, and performing accurate student assessments.

17. Mx. Jackson is and was at all times relevant non-binary, meaning they do not identify exclusively as a man or a woman. While student teaching, Mx. Jackson went by "Ms. Jackson" and used she/her/they/them pronouns.

18. Plaintiff's gender identity (and their use of pronouns related to that identity) is a protected characteristic under the First Amendment, Title VII, and Title IX.

19. The first half of the spring semester of 2021, Mx. Jackson was assigned to student teach vocal music at Blue Hills Elementary School ("Blue Hills"), an elementary school within the District. The second half of spring semester 2021, they were assigned to student teach vocal music at Fort Osage High School, a high school within the District.

## Student Teaching at Blue Hills Elementary

20. On or about January 11, 2021, Mx. Jackson began student teaching at Blue Hills. They completed that assignment on February 28, 2021.

21. The mentoring music teacher at Blue Hills during Mx. Jackson's assignment was Nathan Gearke.

22. The principal of Blue Hills during Mx. Jackson's assignment was Monica Shane.

23. By all accounts, Mx. Jackson performed their duties at Blue Hills extremely well. Upon information and belief, no student, parent, faculty member or administrator complained or

negatively commented upon Mx. Jackson's tenure. In fact, Mx. Jackson was provided very positive feedback.

24. This favorable impression resulted in Mx. Jackson being selected to fill the full-time music teacher position vacated by Mr. Gearke less than two months later. That opportunity would ultimately be revoked by the District.

**Student Teaching at Fort Osage High School and the Beginning of the District's Discriminatory Behavior**

25. On or about March 2, 2021, Mx. Jackson began student teaching at Fort Osage High School.

26. The University of Missouri – Columbia instructs teachers to introduce themselves to their classes by using their chosen and appropriate pronouns. This instruction is provided in multiple core courses, including Learning, Teaching & Curriculum 2040 and Teaching Music II.

27. The National Education Association ("NEA"), the nation's largest professional employee organization, provides guidance regarding the use of student preferred pronouns; students should be addressed by their preferred names and pronouns, and a school's intentional and persistent refusal to respect a student's gender identity should be considered discriminatory.

28. The University of Missouri LGBTQ Resource Center outlines why the use of proper pronouns for students is so important:

> Understanding pronouns beyond the gender binary creates an inclusive space for those who identify as agender, genderqueer, intersex, nonbinary, and/or trans. . . . Using pronouns from the gender binary may not be done with bad intention, but it can be disrespectful, hurtful, and oppressive. When someone is misgendered, it can make the person you are referring to feel disrespected, alienated, dysphoric, or invalidated.[1]

---

[1] https://lgbtq.missouri.edu/resources/gender-pronouns/.

29. The mentoring vocal music teacher at Fort Osage during Mx. Jackson's assignment was Julie Ammons.

30. Mx. Jackson introduced themselves to the Fort Osage faculty and staff as non-binary and requested that she/her/they/them pronouns be used.

31. While first introducing themselves to a class at Fort Osage, Mx. Jackson noted that they are non-binary and use she/her/they/them pronouns.

32. Upon Mx. Jackson introducing themselves to their class, Ms. Ammons challenged the form of introduction, stating that it was "unnecessary" for Mx. Jackson to introduce themselves in that fashion because "you can tell someone is a boy or girl by looking at them."

33. The following day Ms. Ammons did not allow Mx. Jackson to introduce themselves to the class, a group of students which Mx. Jackson had not met prior.

34. Mx. Jackson was not allowed to introduce themself to a class again while teaching at Fort Osage.

35. For the entirety of Mx. Jackson's assignment at Fort Osage, Ms. Ammons refused to acknowledge their non-binary identity.

36. As part of their student teaching regimen at Fort Osage, Mx. Jackson was expected to teach Music Appreciation and instruct four choirs. They were responsible for lesson plans, programming, and instruction in the classroom with their "capstone" on May 11, 2021, where Mx. Jackson was scheduled to conduct the Fort Osage High School Pops Concert.

37. A student teacher's "capstone" event is an important part of the student teaching experience. The capstone is the student teacher's opportunity to design and implement a unit of study. In the case of Mx. Jackson and many other vocal music student teachers, the capstone culminates in a concert directed by the student teacher.

38. On March 22, 2021, Mx. Jackson conducted several pieces during the Spring Concert. Mx. Jackson was praised for their effort and skills, and received only positive feedback arising from their participation in that concert.

39. Starting in April 2021, Mx. Jackson was instructing full time in the classroom at Fort Osage.

40. On April 13, 2021, the Fort Osage School Board approved Mx. Jackson's employment as a substitute teacher. Mr. Gearke had previously asked Mx. Jackson to apply for a substitute teaching position so they could teach his class at the end of the year.

**While Student Teaching at Fort Osage, Mx. Jackson is Selected to Fill the Soon-to-Be Vacant Music Teaching Position at Blue Hills**

41. Approximately the beginning of April, Mx. Jackson was informed by Mr. Gearke that he was leaving his teaching position at Blue Hills and that he believed Mx. Jackson should apply.

42. Mr. Gearke recommended Mx. Jackson to Ms. Shane, the principal at Blue Hills.

43. On April 15, 2021, Mx. Jackson interviewed with Ms. Shane for the full-time music teaching position to begin fall 2021.

44. The interview went well, and on April 22, 2021, Ms. Shane texted Mx. Jackson and expressed "I want to hire you!"

45. On April 24, 2021, Mr. Gearke requested that Mx. Jackson co-teach with him on May 24 and 25 "so that we may have time to talk, eat, plan and transition."

46. Mx. Jackson was requested by Mr. Gearke to substitute teach at Blue Hills during the last two weeks of class in his absence. Mx. Jackson agreed.

47. Mx. Jackson understood, through interactions with Ms. Shane and additional Blue

Hills staff, that the music teaching position was being offered to them. Mx. Jackson relied upon these interactions, and in doing so, ceased their search for a fall 2021 music teaching position.

### The Discriminatory Behavior at Fort Osage Continues and Culminates

48. As noted above, the University of Missouri – Columbia instructs student teachers that they should introduce themselves to their class by stating their preferred pronouns and honor the pronouns requested by each student.

49. During their assignment at Fort Osage, Mx. Jackson was approached by several high school students who identified as non-binary and requested that Mx. Jackson use gender-neutral pronouns when addressing them. Following their instruction, Mx. Jackson honored those requests and utilized gender-neutral pronouns for those students throughout the semester.

50. In the middle of April, Mx. Jackson changed their hair style to better conform to and project their non-binary gender status.

51. After the change in hair style, Ms. Ammons' behavior toward Mx. Jackson changed. Specifically, Ms. Ammons stopped inviting Mx. Jackson to lunch, and generally ceased all non-education related interactions. She continued to refuse to acknowledge Mx. Jackson's non-binary identity.

52. On Tuesday, May 4, 2021, Ms. Ammons spoke with Mx. Jackson's University of Missouri – Columbia student advisor, Leah Gumbel.

53. On that call, Ms. Ammons reported that there was a level of discomfort surrounding Mx. Jackson's use of gender-neutral pronouns in the classroom to describe both themselves and non-binary students, and that she planned to speak with Mx. Jackson regarding that issue.

54. Ms. Ammons further noted on the call that she wanted to maintain a good

relationship with Mx. Jackson as they would be teaching within the District the following year. She praised Mx. Jackson's teaching skills and raised no other concerns.

55. Later that same day, Ms. Ammons sent an e-mail to Mx. Jackson (blind copied to Ms. Gumbel and Ryan Schartz, the Fort Osage Activities Director) asking Mx. Jackson to "design the program for the Pop's Scholarship Concert" and to "help me organize my music library during class on Wednesday and Thursday." Ms. Ammons further noted, "Consequently, I am going to teach and direct all classes," effectively removing Mx. Jackson from all classroom teaching duties.

56. On Wednesday and Thursday, May 5 and 6, 2021, rather than teach and direct classes as had been the norm, Mx. Jackson worked on organizing the music library as requested by Ms. Ammons.

57. Friday, May 7, 2021, was a virtual day. While Mx. Jackson continued to organize the music library that day, they were interrupted and called into a meeting with Ms. Ammons and Mr. Schartz. Mx. Jackson had received no prior notice of this meeting.

58. During that meeting, Mr. Schartz advised Mx. Jackson that they were making parents and students "uncomfortable" with their use of gender-neutral pronouns when referencing themself and the other students who had requested this designation. Mr. Schartz stated that the use of gender-neutral pronouns was "too personal," "too political," and that Mx. Jackson was "hired to only teach students."

59. Contrary to his statements, the Fort Osage R-1 School District Policies contain no rules – and, correspondingly, no prohibitions – concerning the use of a teacher or student's preferred pronouns. Indeed, Mx. Jackson had violated no State or District policy by introducing themself using their preferred pronouns or honoring the requests of students who requested

9

gender-neutral pronouns. Mr. Schartz was attempting to enforce policies that did not exist.

60. Following the May 7, 2021 meeting with Ms. Ammons and Mr. Schartz, Mx. Jackson was not allowed to interact with students in any teaching or conducting capacity.

61. Subsequently, on Monday, May 10, 2021, Ms. Ammons advised Mx. Jackson that they would not be allowed to conduct the May 11, 2021 concert as previously planned. No reason was provided.

62. On Tuesday, May 11, 2021, rather than conduct the Pop's Scholarship Concert as their capstone project, Mx. Jackson was assigned to the sound booth.

63. On May 12, 2021, Mx. Jackson received a call from Ms. Shane, the Blue Hills principal, advising that on May 11, 2021, the Fort Osage School Board had rejected an offer of employment based on a report provided to it by Mr. Schartz.

64. Ms. Shane further advised Mx. Jackson that they were not allowed to conduct the concert on May 11, 2021 due to the issues raised by Mr. Schartz at the May 7, 2021 meeting.

65. On May 13, 2021, two days after the School Board rejected Mx. Jackson's employment, a cover letter and resume were submitted by Linley C. Tate-Ioanis seeking employment as a music instructor at Blue Hills.

66. On May 17, 2021, Ms. Shane and Ms. Ammons had a conversation regarding Mx. Jackson. Upon information and belief, Ms. Ammons told Ms. Shane that while she believed Mx. Jackson would be "a good music teacher" and that she "was not telling her to hire or not hire Olivia," Ms. Ammons was "concerned about [Mx. Jackson's] mental health" and that Ms. Shane would need to be "in the classroom often to keep an eye on how students are addressed."

67. On May 17, 2021, Ms. Shane advised Mx. Jackson that while she would continue to support them for the music teacher position, the School Board would continue to reject their

employment.

68. Upon information and belief, Ms. Tate-Ioanis was hired as the music teacher at Blue Hills.

69. Upon information and belief, Ms. Tate-Ioanis is outside of Mx. Jackson's protected class.

70. Due to the previously stated circumstances, Mx. Jackson ultimately did not substitute teach as previously planned.

**Plaintiff's Damages**

71. Plaintiff suffered from severe emotional distress as a result of Defendant's discriminatory actions, including depression, insomnia, and loss of enjoyment of life.

72. Based on their reasonable belief that they had secured employment, Mx. Jackson ceased their job search for fall 2021 during a critical window of time when many of these jobs are filled.

73. As a result, Mx. Jackson missed the opportunity to apply for the most desirable and well-paid jobs available.

74. Though they ultimately secured other employment for fall 2021, it was for less pay and benefits than they would have received from Blue Hills.

## VI. CLAIMS FOR RELIEF

**<u>FIRST CLAIM FOR RELIEF</u>**
Sex-Based Discrimination in Violation of
Title VII of the Civil Rights Act of 1964, *as amended*,
42 U.S.C. § 2000e-2(a)

75. Plaintiff hereby incorporates by reference all allegations contained in the preceding paragraphs, as though fully set forth herein.

76. Title VII of the Civil Rights Act of 1964, *as amended*, makes it unlawful for an employer, "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

77. Defendant discriminated against Plaintiff by refusing to hire them based on their sex; specifically, that Plaintiff is non-binary and/or because Plaintiff did not conform to Defendant's sex or gender-based preferences, expectations, or stereotypes.

78. Plaintiff's sex was the determining factor and/or a motivating factor in Defendant's actions.

79. As a direct, legal, and proximate result of the discrimination, Plaintiff has sustained, and will continue to sustain, economic damages to be proven at trial.

80. Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on sex.

**SECOND CLAIM FOR RELIEF**
Sex-Based Discrimination in Violation of
Title IX of the Education Amendments of 1972,
20 U.S.C. § 1681(a)

81. Plaintiff hereby incorporates by reference all allegations contained in the preceding paragraphs, as though fully set forth herein.

82. Title IX provides that no person "shall, on the basis of sex, be excluded from

participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

83. Defendant discriminated against Plaintiff by treating them differently based on their sex; specifically, that Plaintiff is non-binary and/or because Plaintiff did not conform to Defendant's sex or gender-based preferences, expectations, or stereotypes.

84. Defendant excluded Plaintiff from participating in classroom activities, engaging with students, classroom conducting, concert conducting, and related educational activities crucial to their student teaching experience based on their sex; specifically, that Plaintiff is non-binary and/or because Plaintiff did not conform to Defendant's sex or gender-based preferences, expectations, or stereotypes.

85. Plaintiff's sex was the determining factor and/or a motivating factor in Defendant's actions.

86. As a direct, legal, and proximate result of the discrimination, Plaintiff has sustained, and will continue to sustain, economic damages to be proven at trial.

87. Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on sex.

### THIRD CLAIM FOR RELIEF
Violation of First Amendment Right to Freedom of Speech
Retaliation
42 U.S.C. § 1983

88. Plaintiff hereby incorporates by reference all allegations contained in the preceding paragraphs, as though fully set forth herein.

89. By punishing Mx. Jackson for expressing their own preferred pronouns, which is central to their self-identity, Defendant retaliated against Mx. Jackson for exercising their First

13

Amendment rights.

90. Likewise, for punishing Mx. Jackson for using gender neutral pronouns for those students who had requested such designation, Defendant retaliated against Mx. Jackson for exercising their First Amendment rights.

91. When Mx. Jackson introduced themselves to students, faculty, and staff at Fort Osage using their own preferred pronouns, they were engaging in protected speech. Likewise, when Mx. Jackson utilized gender-neutral pronouns for those students who had requested such designation, they were engaging in protected speech. The Defendants retaliated against Mx. Jackson by, among other things, removing them from all student teaching and conducting assignments, rejecting employment that they had been selected for at another school within the District, and cancelling their already scheduled substitute teaching assignment.

92. As a direct, legal, and proximate result, Plaintiff has sustained, and will continue to sustain, economic damages to be proven at trial.

93. Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to free speech as guaranteed by the First Amendment to the United States Constitution.

**FOURTH CLAIM FOR RELIEF**
Violation of First Amendment Right to Freedom of Speech
Content & Viewpoint Discrimination
42 U.S.C. § 1983

94. Plaintiff hereby incorporates by reference all allegations contained in the preceding paragraphs, as though fully set forth herein.

95. By punishing Mx. Jackson for expressing their own preferred pronouns, which is central to their self-identity, and by using gender-neutral pronouns for students, Defendant

engaged in content and/or viewpoint discrimination against Mx. Jackson in violation of their First Amendment rights.

96. Despite not having any written policy, Defendant considered the content and viewpoint of Mx. Jackson's expression when it decided to punish them by, among other things, removing them from all student teaching and conducting assignments, rejecting employment that they had been selected for at another school within the District, and cancelling their already scheduled substitute teaching assignment.

97. Defendant's unbridled discretion in determining these punishments permits District officials to discriminate based on content and/or viewpoint.

98. Defendant exercised this unbridled discretion when it punished Mx. Jackson for introducing themself with their preferred pronouns.

99. The overbreadth of Defendant's discretion chilled the speech of Mx. Jackson, who sought to engage in protected expression in their interactions with students at school and in the classroom.

100. Mx. Jackson's expression regarding gender identity is protected by the First Amendment to the United States Constitution.

101. By punishing them for expressing their gender identity, Defendant has violated Mx. Jackson's right to Free Speech as guaranteed by the First Amendment.

102. As a direct, legal, and proximate result, Plaintiff has sustained, and will continue to sustain, economic damages to be proven at trial.

103. Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to free speech as guaranteed by the First Amendment to the United States Constitution.

## FIFTH CLAIM FOR RELIEF
Negligent Infliction of Emotional Distress

104. Plaintiff hereby incorporates by reference all allegations contained in the preceding paragraphs, as though fully set forth herein.

105. The allegations as set forth above, including, but not limited to Plaintiff's removal from student teaching duties based on their gender identity, Defendant's refusal to hire Plaintiff based on their gender identity, and Defendant's refusal to correctly gender Plaintiff by using their preferred pronouns, caused and continues to cause Plaintiff to suffer severe emotional distress.

106. This level of emotional distress suffered by Plaintiff is both medically diagnosable and significant.

107. Defendant should have realized that its conduct involved an unreasonable risk of causing distress to Plaintiff.

108. Upon information and belief, Defendant has purchased liability insurance covering the claims at issue.

## DECLARATORY RELIEF ALLEGATIONS

109. A present and actual controversy exists between Plaintiff and Defendant concerning their rights and respective duties. Plaintiff contends that Defendant violated their rights under Title VII, Title IX and the First Amendment. Plaintiff is informed and believes that the Defendant denies these allegations. Declaratory relief is therefore necessary and appropriate.

110. Plaintiff seeks a judicial declaration of the rights and duties of the respective parties.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1. For a declaration that Defendant's actions, policies, and practices as alleged herein are unlawful;

2. For lost wages and all other compensation denied or lost to Plaintiff by reason of Defendant's unlawful actions, in an amount to be proven at trial;

3. For compensatory damages for Plaintiff's emotional pain and suffering, in an amount to be proven at trial;

4. For punitive damages in an amount to be determined at trial;

5. For interest on lost wages, compensation, and damages, including pre- and post-judgment interest and an upward adjustment for inflation;

6. For an order enjoining Defendant from engaging in the unlawful acts complained of herein;

7. For reasonable attorneys' fees and costs of suit; and

8. For such other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all causes of action and claims to which they have a right to a jury trial.

Dated: March 21, 2023

                                              Respectfully submitted,

                                              <u>/s/ Douglas M. Schreiner</u>
                                              Douglas M. Schreiner (Mo. Bar #52320)
                                              Blackridge LLC
                                              9500 Nall Avenue, Suite 400
                                              Overland Park, KS 66207
                                              Telephone: (913) 955-3388
                                              Facsimile: (913) 955-324

                                              *Attorney for Plaintiff*